**Henry J. Goldblatt, Plaintiff-Appellant, v. City of Chicago, a Municipal Corporation, Defendant-Appellee.**

**Gen. No. 48,170.**

First District, Second Division.

April 4, 1961.

Arthur Abraham, of Chicago, for appellant.

John C. Melaniphy, Corporation Counsel of the City of Chicago (Sydney R. Drebin and Edward E. Plusdrak, Assistant Corporation Counsel, of counsel), for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court.

Plaintiff seeks a determination as to his right to a building permit for the erection of a gasoline filling station with installation of underground tanks for the storage of flammable liquids and oils. The plaintiff's property is located within 200 feet from a hospital for the care and treatment of mental patients. Ordinances regulating the storage and handling of flammable liquids prohibit the location of such storage tanks within 200 feet of a hospital. (Sections 40–8 and section 127–5, Municipal Code of Chicago). The ordi-

nances were held invalid in an earlier proceedings involving the plaintiff's predecessor in title, however, that judgment was subsequently reversed by the Supreme Court on January 22, 1960. (Bulk Petroleum Corporation v. City of Chicago, 18 Ill.2d 383, 164 N.E.2d 42.) The trial judge granted the City's motion to dismiss the complaint on March 31, 1960, and this appeal followed.

The plaintiff's argument is that he has acquired a vested right of non-compliance with the safety ordinances at the time he acquired the property in question. This novel proposition is based on a construction of Section 76(1) of the Civil Practice Act. (Ch. 110, section 76(1), Ill. Rev. Stat.). That section provides that "If an appeal is perfected or allowed more than 20 days after the entry of any . . . judgment . . . the reversal or modification of the . . . judgment . . . shall not affect the right, title or interest in or to any real or personal property of any person, not a party to the action, acquired after the entry of the . . . judgment . . . but before the appeal operates as a supersedeas under the provisions of this Act . . .".

The plaintiff's predecessor in title, Bulk Petroleum Corp., obtained a declaratory judgment on February 20, 1959, in the Circuit Court, which held the ordinances in question invalid. On March 30, 1959, thirty-eight days later, it sold the property to the plaintiff in the instant case, who was not a party to that prior litigation. The City did not file a Notice of Appeal from that adverse judgment obtained by the Bulk Petroleum Corporation until April 20, 1959, fifty-nine days after the judgment, and it wasn't until July 14, 1959, that this Notice of Appeal was made a supersedeas. Consequently, it is argued, the plaintiff's "right" is not affected by the reversal of the judgment in the case of Bulk Petroleum Corporation v. City of Chicago, 18 Ill.2d 383, 164 N.E.2d 42.

The City contends that the "right" in "right, title or interest" is merely an ingredient of the broader term "title" and should not be construed to include a right of non-compliance with a regulatory ordinance pending final determination of its validity. The argument is based on the discussion in the Historical and Practice Notes (Smith–Hurd Ill. Ann. Stat. Ch. 110, section 74, Historical and Practice Notes, by Albert Jenner and Philip W. Tone, pp. 300–302) (McCaskill, Jenner and Schaeffer, Illinois Civil Practice Act Annotated (1933), pp. 283–5), wherein the authors discuss the phrase "right, title or interest" in terms of a title. Insofar as there are no cases construing this particular provision and also because the Notes are particularly illuminating, we will quote at length from the Notes.

"Under the practice prior to January 1, 1934, the effective date of the Civil Practice Act, a transfer of title to third persons, prior to the filing of a writ of error and after the time for appeal, was not affected by a subsequent reversal or modification. This was so even though the purchaser had notice that writ of error had been sued out and even though he had been made a party to the review proceedings, provided, of course, that supersedeas had not been secured. Suing out a writ of error was regarded as the institution of a new proceedings, not a continuation of the proceedings below . . . Where supersedeas was secured prior to the transfer, then the transferee was bound by the subsequent action of the reviewing court.

The rule did not apply to appeal, however, and title could not be transferred pending appeal. The reason was two-fold: (1) an appeal was a continuation of the proceedings below; and (2) an appeal always operated as a supersedeas, since bond was required in all cases and the appeal became perfected when the bond was approved and filed. . . . The same reason did not apply to writ of error because it was a new suit in the

215

court of review, and the proceedings below remained unaffected unless supersedeas was secured. That is, a purchaser was required only to look at the record below. If it appeared that the judgment or decree had become final and the time for appeal had expired, he was permitted to act upon that record alone without being required to take notice of the possibility of the writ of error, since the latter was a new action in another court. . . .

Where the supersedeas was secured under the writ of error, the supersedeas appeared of record in the lower court and not only stayed further proceedings but placed purchasers on notice.

By section 74(1) of the present act the new form of review was expressly made (and remains under the 1955 revision) a continuation of the proceedings in the trial court. Furthermore, by subsection (1) an appeal as of right need not be perfected sooner than 60 days after judgment, with a possibility of appeal by petition within 1 year. Because of this fact title to property would otherwise be tied up for at least 60 days, and in a good many cases there would be doubt for at least a year, with a possibility of an even more extended period in the cases of infants, persons under duress, and those non compos mentis.

In order to avoid tying up property for extended periods, at least as far as third party transfers are concerned, the provisions of this subsection respecting the necessity of promptly securing supersedeas were inserted in the Act of 1933."

The authors also state that "The provision with respect to interests in real or personal property acquired by a person not a party to the action pending appeal and absent a supersedeas, is based upon section 32(a) of the Judgments Act and should be construed with reference to that section. Chapter 77, section 35(a) contains the heading: 'Title acquired at

216

sale under judgment or decree—Not affected by reversal, modification or setting aside of judgment or decree.' " The expression used in this provision is "right, title and interest." It is clear that this term refers only to "title." The use of "or" and "and" is so frequently inaccurate in statutory enactments that the courts readily change "or" to "and" and vice versa, whenever such conversion is required by the context. 50 Amer. Juris., Statutory Construction, section 282, pp. 267–8. Boyles v. McMurphy, 55 Ill. 236, 239. Since these provisions are to be construed together there is an additional reason for supposing that the legislature intended that the somewhat analogous expression "right, title or interest" should be interpreted to mean "title."

█ Counsel for plaintiff has cited no cases where the term was construed disjunctively and we know of none. In the absence of clear evidence of the legislative intent to the contrary, we must assume that the provision of section 76(1) was designed to protect the transfer of "title" to third persons, not a party to the action.

█ The plaintiff acknowledges that his "right" of non-compliance with the safety ordinance is based on the judgment order of February 20, 1959, in favor of Bulk Petroleum Corporation. At the time of the conveyance of the vacant lot, the City still had over 20 days to appeal the judgment invalidating the ordinances, as a matter of right, and the Notice of Appeal had already been filed when the plaintiff applied for the building permit. Under these circumstances, it can hardly be contended that the plaintiff thereby acquired a "vested right" in the continuation of the ruling invalidating the ordinances. It is well settled that a right cannot be regarded as "vested" unless it amounts to something more than a mere expectation of the continuance of the existing law. 11 Amer. Juris.,

217

section 370, p. 1199. Neither owner of the subject property could have reasonably expected that the judgment rendered by the lower tribunal would not be appealed. In effect, the plaintiff speculated on a favorable ruling in the reviewing court in the case involving his predecessor in title. The plaintiff's reliance on the earlier ruling and the expenditure made in the purchase of the property does not give him a vested right of non-compliance with the safety ordinances. Persons who contract concerning matters which may be regulated by virtue of the police power of government necessarily enter into their engagement subject to the possible exercise of that power, although it may be latent at the time the agreement was made. 11 Amer. Juris. section 264, p. 1000. It makes no difference whether the issue involves the passage of an ordinance by a municipality or the determination of its validity by the Supreme Court.

The instant case is significantly dissimilar from the case of People v. Morton Grove, Village of, 16 Ill.2d 183, 157 N.E.2d 33, and other cases cited by the plaintiff involving zoning ordinances. The rule there followed was that in the absence of fraud, there is a vested right in a permit, when substantial expenditures and good faith acts have been entered upon by permittee, toward accomplishing the purpose for which the permit was issued. This is the majority rule in the country. Metzenbaum, "Law of Zoning," 2nd ed., Vol. 2, p. 1167. In the case at bar, the plaintiff's application for a permit was denied because the judgment invalidating the ordinances as applied to the property was pending appeal. Although the zoning ordinance permitted the use in question, the plaintiff failed to meet the additional requirements of the safety ordinances relating to the location of the underground storage tanks. The money expended in the purchase of the property from Bulk Petroleum Corpo-

218

ration was therefore not in reliance on a permit, or even on the probability of the issuance of one. Even under the law of zoning, the purchase of land with the intent to use it for a use then permissible under a zoning ordinance, does not prevent the city from changing its zoning ordinance applicable thereto, as such property is always subject to the city's lawful exercise of the police power. Metzenbaum, supra., p. 1165, and cases there cited. It thus seems very evident that the analogous situations involving the rights of property owners under the zoning laws do not support the plaintiff's position.

The rationale applied by this court in Chicago Title & Trust Co. v. Palatine, Village of, 22 Ill.App.2d 264, 160 N.E.2d 699, is particularly appropriate to the case at bar. In that case the petitioner applied for a permit for a use which was permissible under the existing ordinance, but which would have been prohibited under the proposed ordinance, then under consideration. The application was denied and the petitioner prayed for and was granted a writ of mandamus ordering the issuance of the permit. This court reversed that decree and held that "while the municipal authority has no right to arbitrarily or unreasonably refuse or delay the issuance of the permit, the issuance may be delayed where there is under consideration or pending an ordinance under which the issuance of the permit would be prohibited."

The plaintiff filed suit in this case on October 21, 1959. On January 22, 1960, the Supreme Court held that the ordinances as applied to the property in question were valid. Consequently, the Circuit Court's judgment of March 31, 1960, was proper as a case is determined on the law as it stands when the judgment is rendered and not when the suit was brought. Cooley's Constitutional Limitations, 6th ed., Ch. XI, p. 469. The effect of the Supreme Court's rul-

219

ing was that the property was subject to these ordinances even at the time of the conveyance of the property to the plaintiff, since the judgment reversing the lower court in Bulk Petroleum, supra., had a retroactive operation. 5B C.J.S. Appeal & Error, section 1950, p. 511. This court is bound to follow the Supreme Court's decision that the ordinances prohibiting the location of the storage tanks on the property in question are valid ordinances and that the owner of the property does not have any right of non-compliance with them. The rule is well established that "when the supreme judicial tribunal of the State has declared what the law is on any point, all other courts are bound to conform to its decision when the same point comes again in litigation." 14 I.L.P. section 81, p. 216. Agricultural Trans. Ass'n v. Carpentier, 2 Ill.2d 19, 27, 116 N.E.2d 863.

██ A contrary interpretation of section 76(1) (Ch. 110 of the Civil Practice Act) would permit a party during the pendency of an appeal to annul or nullify a valid regulatory municipal ordinance by the simple device of conveyance of the property to a third person. "It is axiomatic that in the construction of statutes an interpretation which would produce mischievous or absurd results should be avoided." People v. Edwards, 413 Ill. 514, 528, 109 N.E.2d 754.

██ ██ The plaintiff's construction of section 76 (1), if adopted, would in effect estop the City from enforcing its ordinances because it failed to appeal within twenty days from a judgment invalidating the ordinances. Under this interpretation, the plaintiff would have acquired a "vested right" if the property had been conveyed to him on the twenty-first day following the declaratory judgment in favor of his predecessor in title. However, it is clear from the cases that "in matters involving strictly public rights the courts do not interpose to hold the municipality estopped ex-

cept under special circumstances which would make it highly inequitable or oppressive to enforce such public rights." Cities Service Oil Co. v. City of Des Plaines, 21 Ill.2d 157, 161, 171 N.E.2d 605. While there is some merit in the position that the City should have acted sooner in this matter, it does not follow that it is thereby estopped from enforcing its ordinances, especially where there were no expenditures made, aside from the original purchase price, and there could have been no reliance on the judgment invalidating the ordinances, as the statute allows an appeal within 60 days as a matter of right. It is clear that the legislature in enacting section 76(1) did not intend to estop the municipality and grant a vested right of non-compliance with its ordinances simply by virtue of the conveyance pending final appeal.

The judgment of the trial court dismissing the plaintiff's suit is affirmed.

Judgment affirmed.

FRIEND, J. concurs.

BURKE, P. J. dissenting:
Since the notice of appeal by the City was filed more than 20 days after the entry of the judgment, and the plaintiff (who was not a party to the suit resulting in the judgment) acquired his rights 38 days after the entry of the judgment and before any notice of appeal was filed or supersedeas ordered, the plaintiff's rights in the property are not affected by the appeal from the judgment. Section 76 of the Civil Practice Act protects persons not parties to the suit where no supersedeas has been issued. See Barnard v. Michael, 392 Ill. 130, 63 N.E.2d 858; Cairo Lumber Co. Inc. v. Corwin, 325 Ill. App. 319, 322, 60 N.E.2d 110. Plaintiff must be considered to have acquired his right, title and interest in the property free from the

221

effect of the reversal of the judgment of February 20, 1959. McCaskill, Jenner and Schaeffer, Illinois Civil Practice Act Annotated (1933) pp. 283–287. The right to erect and maintain a gasoline filling station with underground tanks upon the premises purchased by plaintiff without complying with the location and frontage consent ordinances is a right in real property within the meaning of Section 76 of the Civil Practice Act. See Western Theological Seminary v. Evanston, City of, 325 Ill. 511, 156 N. E. 778; Douglas v. Melrose Park, Village of, 389 Ill. 98, 58 N.E.2d 864; People v. Morton Grove, Village of, 16 Ill.2d 183, 191, 157 N.E.2d 33; Fifteen Fifty North State Bldg. Corp. v. Chicago, 15 Ill.2d 408, 155 N.E.2d 97; Deer Park Civic Ass'n v. Chicago, 347 Ill. App. 346, 106 N.E.2d 823. The judgment should be reversed and the cause remanded with directions to deny the motion to strike the complaint and to require the City to answer.