**Frank ANDRE et al.,**
**Plaintiffs-Appellants,**

**v.**

**BOARD OF TRUSTEES OF the VILLAGE OF MAYWOOD et al., Defendants-Appellees.**

No. 77–1337.

United States Court of Appeals, Seventh Circuit.

Argued June 16, 1977.

Decided July 27, 1977.

---

Lawrence Jay Weiner, Chicago, Ill., for plaintiffs-appellants.

Stanley H. Jakala, Berwyn, Ill., for Amicus Curiae.

Ronald S. Cope, Peter M. Rosenthal, Chicago, Ill., for defendants-appellees.

Before PELL and BAUER, Circuit Judges, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

On August 14, 1975 the Trustees of the Village of Maywood (Maywood) adopted an ordinance which required all department heads and administrative personnel to establish residency within Maywood no later than two years after the date of its passage. All other employees and officers were required by the same ordinance to establish Maywood residency within four years. Plaintiffs,[1] who consist of policemen, firemen, and other municipal employees challenged the validity of the residency ordinance by instituting this action in the district court under 42 U.S.C. § 1983 and various provisions of the Constitution. Plaintiffs are currently employed by Maywood, and reside outside the corporate limits of Maywood.

Maywood responded to the complaint by filing a motion to dismiss. The district court, Judge Leighton, granted the motion to dismiss, indicating that his reasons for doing so were adequately expressed by Judge Decker of the same court in an unreported memorandum opinion dismissing an unrelated action involving a similar residency requirement.[2] In seeking reversal plaintiffs contend that the challenged ordinance operates retrospectively to deprive them of pre-existing vested rights in violation of the due process clause of the Fourteenth Amendment, impairs an obligation of contract in violation of Article I, § 10 of the Constitution, and should be scrutinized for equal protection purposes against a compelling state interest standard. For the rea-

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. The complaint alleged that the 42 named plaintiffs brought this action in their own behalf and as a class action on behalf of all similarly situated employees of Maywood. The district court did not certify any class under Rule 23(c), Federal Rules of Civil Procedure.

2. *Cook County College Teachers Union, Local 1600 v. Taylor,* 432 F.Supp. 270 (N.D.Ill.1977). We note that the *Cook County* case is presently on appeal to this Court, No. 76–1266.

sons stated below, we reject these contentions and affirm the judgment of the district court.

We note at the outset that residency restrictions imposed upon municipal employees as a continuing condition of their public employment have been upheld by numerous courts. Such residency restrictions have been held to be rationally related to legitimate governmental purposes. *E. g. McCarthy v. Philadelphia's Civil Service Commission*, 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976); *Detroit Police Officers Assn. v. City of Detroit*, 385 Mich. 519, 190 N.W.2d 97 (1971), appeal dismissed for lack of substantial federal question, 405 U.S. 950, 92 S.Ct. 1173, 31 L.Ed.2d 227 (1972); *Mogle v. Sevier County School District*, 540 F.2d 478 (10th Cir. 1976); *Wardwell v. Board of Education of City School District*, 529 F.2d 625 (6th Cir. 1976); *Wright v. City of Jackson, Mississippi*, 506 F.2d 900 (5th Cir. 1975); *Miller v. Krawczyk*, 414 F.Supp. 998 (E.D. Wis.1976); *Pittsburgh Federation of Teachers v. Aaron*, 417 F.Supp. 94 (W.D.Penn. 1976); *Conway v. City of Kenosha, Wisconsin*, 409 F.Supp. 344 (E.D.Wis.1975); *Ector v. City of Torrance*, 10 Cal.3d 129, 109 Cal. Rptr. 849, 514 P.2d 433 (1973), *cert. denied*, 415 U.S. 935, 94 S.Ct. 1451, 39 L.Ed.2d 493 (1974); *Hattiesburg Firefighters Local 184 v. City of Hattiesburg*, 263 So.2d 767 (Miss. 1972); *Abrahams v. Civil Service Commission*, 65 N.J. 61, 319 A.2d 483 (1974); *Salt Lake City Firefighters Local 1645 v. Salt Lake City*, 22 Utah 2d 115, 449 P.2d 239 (1969); *Kennedy v. City of Newark*, 29 N.J. 178, 148 A.2d 473 (1959). In at least one case involving a state statute requiring policemen and firemen to reside in the municipality where they are employed, a three-judge district court held that the residency restriction was justified by a compelling state interest. *Krzewinski v. Kugler*, 338 F.Supp. 492 (D.N.J.1972).

### I.

■ In this case plaintiffs urge us to scrutinize strictly the challenged ordinance because, plaintiffs contend, that ordinance acts retrospectively in violation of due process arbitrarily to deprive them of a pre-existing vested contractual right to live where they choose. In this regard plaintiffs argue that for many years Maywood consented to and allowed them to reside outside the corporate limits of Maywood. Further, plaintiffs point to Section I(B)(2) of the Maywood personnel code which was adopted in 1971 with the passage of an ordinance, and which provides:

> In hiring new employees, preference will be given Maywood residents—all other factors being equil (sic). If qualified Village residents do not apply, then nonresidents may be employed in any position.

Plaintiffs then assert that this ordinance was adopted in accordance with *Ill.Rev. Stat.*, ch. 24, § 3–14–1 (1975) which provides in relevant part:

> No person shall be eligible to any municipal office unless he is a qualified elector of the municipality and has resided therein at least one year next preceding his election or appointment. . . .
>
> . . . [M]unicipalities having a population of not more than 500,000 are hereby authorized and empowered to adopt ordinances which allow firemen and policemen to reside outside the corporate limits of the municipality by which they are employed both at the time of appointment and while serving as such firemen and policemen.

It is plaintiffs' principal argument that the 1971 adoption of Section I(B)(2) of the personnel code, together with the past actions of Maywood in allowing its employees to reside elsewhere, created in plaintiffs a vested contractual right to live outside Maywood. The adoption of the 1975 residency requirement ordinance acted to repeal Section I(B)(2)'s "express approval and authorization" to reside outside Maywood and, their argument concludes, resulted in an unconstitutional exercise of the municipality's police power. We do not agree.

■ Section I(B)(2) does not grant an express approval or authorization to Maywood employees to live outside Maywood. Whatever that ordinance established with

respect to hiring preferences, we conclude that it did not serve to create the vested contractual right claimed by appellants here. Nothing in the language of Section I(B)(2) indicates the creation of an absolute unconditional right in plaintiffs to live outside Maywood. Even if Section I(B)(2) did create some interest in the plaintiffs, that interest would have been contingent upon the anticipated continuance of the ordinance. Such an interest does not amount to a vested right.[3] Cf. *Smith v. Hill,* 12 Ill.2d 588, 594, 147 N.E.2d 321 (1958); *Goldblatt v. City of Chicago,* 30 Ill.App.2d 211, 217–218, 174 N.E.2d 222 (1961).

Further, we do not agree with plaintiffs' contention that the challenged residency ordinance is retrospective in nature. We have already concluded that § I(B)(2) and Maywood's past actions with respect to employee residency did not create in plaintiffs an antecedent vested right to reside where they choose, and that any interest to reside outside Maywood was subject to the reasonable exercise of Maywood's police powers. We note in addition that the residency ordinance requires present Maywood employees to establish residency within the Village by specified future dates. The ordinance does not penalize those employees living outside Maywood for having so resided in the past. Under the terms of the ordinance, an employee will be charged with a violation of the residency ordinance not because the employee resided outside Maywood in the past, but rather, an employee will be charged with a violation for failure to establish a Maywood residency within the two or four year period allowed to them to establish such a residency. As such, the challenged ordinance can not be said to penalize activity which was other-wise lawful in the past, and, hence, cannot be considered retrospective in application.

II.

Plaintiffs also contend that the challenged ordinance served to repeal § I(B)(2), which, together with Maywood's prior acquiescence and consent, had created a contractual obligation on the part of Maywood to allow the plaintiffs to reside outside the Village. The adoption of the residency ordinance, plaintiffs contend, impaired this obligation of contract in violation of Article I, § 10 of the Constitution. The asserted obligation on Maywood's part gives rise to the vested rights claimed by plaintiffs to reside in the place of their choice. For the reasons already given we find no vested contractual right in plaintiffs, and no obligation on Maywood's part giving rise to the claimed right. Without such obligation, there can be no impairment. *Keefe v. Clark,* 322 U.S. 393, 396, 64 S.Ct. 1072, 88 L.Ed. 1346 (1944).

Plaintiffs argue that this case is to be determined by *United States Trust Company v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977), in which the Supreme Court held that a State's impairment of a contract such as was involved in that case can only be upheld if it is both reasonable and necessary to serve an important public purpose. *Id.,* at 31, 97 S.Ct. 1505. Plaintiffs' reliance on the *United States Trust Company* case is misplaced. The obligation impaired in that case was a statutory covenant between New York and New Jersey which limited the use of the Port Authority of New York and New Jersey's revenues and reserves which were pledged as security for its bonds. A New

---

**3.** Plaintiffs also argue that the incorporation of § I(B)(2) into their contracts of employment and the action of Maywood for many years in consenting to and acquiescing in employees' residency outside Maywood create a situation in which Maywood should be estopped from denying the existence of their claimed vested rights. We have serious doubts that a municipality can be estopped with respect to its governmental function through the exercise of its police power. Cf. *Hall v. Cook County,* 359 Ill.

528, 195 N.E. 54; *Melin v. Community Consolidated School District No. 76,* 312 Ill. 376, 144 N.E. 13; *Western Pride Builders, Inc. v. Koraska,* 91 Ill.App.2d 458, 235 N.E.2d 313 (1968). In any event, the complaint does not allege any positive, unequivocal acts on the part of the municipal officers calling for the invocation of an estoppel. *New-Mark Builders, Inc. v. City of Aurora,* 90 Ill.App.2d 98, 233 N.E.2d 44 (1967).

Jersey statute repealed this statutory covenant. The Court concluded that the repealing statute was an impairment of the State's contract and constituted a violation of the contract's clause in the absence of a showing that the impairment was both reasonable and necessary to serve an important purpose claimed by the State. *Id.,* at 31, 97 S.Ct. 1505. The contract's rights and obligations in the *United States Trust Co.* case were clear, unequivocal, concrete, and statutorily expressed. Such cannot be claimed here. In this case, we have a claimed vested contractual right and an asserted correlative contractual obligation, the genesis of each of which is said to be an ordinance establishing hiring preferences and Maywood's past actions in acquiescence and consent. Since we have concluded that neither the ordinance nor Maywood's past action give rise to the rights claimed and the obligations asserted, and since we have found that the residency ordinance is not retrospective in character, the challenged ordinance does not impair any obligation of contract.

### III.

■ Plaintiffs alternatively contend that if they do not have antecedent vested contract rights to reside outside Maywood, the challenged ordinance nevertheless requires the application of the strict scrutiny test under the equal protection clause. That test, which requires that legislation be upheld only if it is necessary to serve a compelling state interest, is to be employed to determine the constitutionality of a legislative classification when that classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312–313, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976); *San Antonio Independence School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Plaintiffs contend that the residency ordinance infringes their fundamental

rights to interstate travel, intrastate travel, and to live where they choose. The right to travel interstate, although nowhere expressed in the Constitution, has long been recognized as a basic fundamental right. *United States v. Guest,* 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966). All residency restrictions have an effect on the right to interstate travel, but only those residency restrictions which can be characterized as "durational" have been found to unconstitutionally impinge or penalize the right to travel, in the absence of some compelling state interest. Durational residency requirements classify residents into groups of residents who have fulfilled the residency requirements and those who have not. Where eligibility for government benefits such as welfare, *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), or medical care, *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974), or where the exercise of other fundamental rights such as voting, *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), are conditioned upon the fulfillment of a durational residency requirement, the classification impermissibly penalizes the fundamental right to travel interstate in violation of the equal protection clause, unless a compelling state interest is shown.

Although it is difficult to see how the travel such as was involved in *Shapiro, Dunn* and *Memorial Hospital*[4] is similar to the right to travel claimed in this case, we observe that any classification created by the challenged ordinance simply is not a classification on the basis of a durational residency requirement. Bona fide residency requirements as continuing conditions of municipal employment rest upon footings significantly different from those of durational residency requirements. Indeed, *Shapiro, Dunn,* and *Memorial Hospital* were careful to maintain the differences between the two. The fact of residency itself was noted to be distinct from durational (or "waiting period") residency in *Shapiro,* 394

---

**4.** Those cases dealt with travel in the sense of migration. *Shapiro, supra,* 394 U.S. at 629, 89

S.Ct. 1322; *Memorial Hospital, supra,* 425 U.S. at 255–256, 94 S.Ct. 1076.

U.S. at 636, 89 S.Ct. 1322, and only the latter was found to be unconstitutional. *Dunn* "emphasize[d] again the difference between bona fide residence requirements and durational residence requirements." 405 U.S. at 343, 92 S.Ct. at 1003. In *Memorial Hospital,* quoting *Dunn,* the Court cautioned that its decision was not intended to "cast doubt on the validity of appropriately defined and uniformly applied bona fide residence requirements." 415 U.S. at 255, 94 S.Ct. at 1081.

Recently, such a residency requirement was found in *McCarthy v. Philadelphia Civil Service Commission, supra,* 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366, not to violate a municipal employee's right to interstate travel. To whatever extent the right of interstate travel is involved in this case, that right is not penalized unconstitutionally by the type of bona fide continuing residency requirement adopted by Maywood here.

 Plaintiffs argue that *McCarthy* is distinguishable from the present case in that *McCarthy* involved a residency requirement existing at the time of an employee's application, whereas here the requirement is imposed after employment has commenced. Plaintiffs, however, do not indicate how their rights to interstate travel are affected by this distinguishing fact. Furthermore, the claimed right in *McCarthy* was municipal employment while residing elsewhere. The converse of the claim presented in *McCarthy* is asserted here: the right to reside elsewhere while being employed by the municipality. To the extent that *McCarthy* indicates that bona fide residency requirements as continuing conditions of municipal employment do not violate an employee's right to interstate travel, it is dispositive of plaintiffs' contention here. Since appropriately defined and uniformly applied bona fide residence requirements do not impermissibly violate the right to interstate travel, the distinction between such requirements imposed as an initial condition of municipal employment and such requirements imposed as a continuing condition of such employment becomes a distinction without a difference.

Plaintiffs also claim that the challenged ordinance impermissibly infringes their fundamental right to travel intrastate. The claimed right of intrastate travel has been rejected by several courts. *Wright v. City of Jackson, Mississippi, supra; Abrahams v. Civil Service Commission, supra; Ector v. City of Torrance, supra.* Those cases recognizing a fundamental right of intrastate travel have done so vis-à-vis durational residency requirements. *Wellford v. Battaglia,* 343 F.Supp. 143 (D.Del.1972), aff'd, 485 F.2d 1151 (3d Cir. 1975), *King v. New Rochelle Municipal Housing Authority,* 442 F.2d 646 (2d Cir. 1971), *cert. den.,* 404 U.S. 863, 92 S.Ct. 113, 30 L.Ed. 107 (1971), *Eggert v. City of Seattle,* 81 Wash.2d 840, 505 P.2d 801 (1973). Inasmuch as a durational residency requirement is not involved in this case, we need not consider whether a right of intrastate travel should be acknowledged. Nor do we find any basis for plaintiffs' claim of violation of a fundamental right to live where they choose.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.